1  ILENE J. LASHINSKY (#003073)
   United States Trustee
2  District of Arizona

3  PATTY CHAN (#027115)
   Trial Attorney
4  230 N. First Ave., Suite 204
   Phoenix, Arizona 85003-1706
5  Phone: (602) 682-2633
   FAX:   (602) 514-7270

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>CORE RESOURCE MANAGEMENT, INC.,<br><br>　　　　Debtor.<br><br>In re:<br><br>NITRO PETROLEUM, INC.,<br><br>　　　　Debtor.<br><br>This filing applies to:<br><br>　　＿＿ALL DEBTORS<br>　　＿X＿SPECIFIED DEBTOR:<br><br>CORE RESOURCE MANAGEMENT, INC.<br>(Case No. 2:16-bk-06712-BKM) | In Proceedings under Chapter 11<br><br>Case No. 2:16-bk-06712-BKM<br>Case No. 2:16-bk-08288-BKM<br>(Jointly Administered)<br><br>**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO THE *EXPEDITED* APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF TIMOTHY H. SHAFFER AND CLOTHO CORPORATE RECOVERY, LLC AS FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Hearing Date: December 21, 2016<br>Time:　　　　10:30 a.m.<br>Location:　　230 North 1st Avenue<br>　　　　　　#701, 7th Floor |

　　　　Pursuant to 28 U.S.C. § 586(a)(3)(B), in addition to 11 U.S.C. § 307[1], the United States Trustee for the District of Arizona (the "UST") hereby files her "Limited Objection" to the *original* and

---

[1] Unless otherwise indicated, all chapter, section, federal bankruptcy rule, and local bankruptcy rule references are to the Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1532, the Federal Rules of Bankruptcy Procedure (the "Rules"), Rules 1001-9037, and to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Arizona (the "Local Rules").

*amended* "Application for an Order Authorizing the Retention and Employment of Timothy H. Shaffer and Clotho Corporate Recovery, LLC as Financial Advisors to the Committee (the "Application")" (see Docket Entries #150 and #155) filed and expedited by the Official Committee of Unsecured Creditors' (the "Committee") appointed in the Core Resource Management bankruptcy case ("Core" or "Debtor") for the following reasons:

**A.    FACTS**

1. The Application seeks to retain Timothy H. Shaffer ("**Mr. Shaffer**") and his firm Clotho Corporate Recovery, LLC ("**Clotho**" or together with Mr. Shaffer, the "**Proposed FA**") as financial advisors for the Committee pursuant to §§ 328, 504, 1102, and 1103 and Rules 2014, 2016, and 5002. See Application (Docket Entry #155), p. 1.

2. The Application has attached as Exhibit A an engagement letter dated December 2, 2016 (see Docket Entry #155-1 hereinafter referred as "**Engagement Letter**"), incorporated into the Application. The relevant terms under the Engagement Letter are:

   i. Compensation for Clotho's [whereby the only "staff" listed is Mr. Shaffer] services at $300 per hour. See id. at p. 3.

   ii. It is anticipated that Proposed FA's initial analysis will entail "approximately 60 hours of work (i.e., $18,000)." See id. at p. 4.

   iii. In addition to the fees, Proposed FA will be paid "for any contract consulting and/or administrative labor, as approved by the Committee." Id. at p. 3.

   iv. Proposed FA will be reimbursed for any "out-of-pocket expenses, such as travel, vendor charges, etc. that we incur." Id.

   v. Clotho is retained to assist the Committee to secure successful exit financing, "***which means a financing that closes as part of a confirmed plan of reorganization in this case***," upon which Clotho will be entitled to a transaction fee of 2.75% of any exit financing it procures (the "Transaction Fee") . . . subject to the Court's review under Section 328(a) of the Bankruptcy Code." Id. at p. 4.

   vi. "Invoices will be presented once a month or as matters dictate and are due upon presentation. In the event that fees are unpaid, Clotho may cease all services under this engagement until paid. Notwithstanding the foregoing, or anything in

the Standard Terms, Clotho understands and agrees that it will be compensated
                    from the Debtor's estate and not by the Committee or its members." Id. at p. 3

          vii.      "Clotho assumes no responsibility or liability under this Agreement other than to
                    render the services called for hereunder in good faith, and shall not be responsible
                    for any action taken by Committee in following or declining to follow any advice
                    or recommendations of Clotho . . . except by reason of acts by Clotho constituting
                    willful or wanton misconduct or gross negligence." See id. at p. 5.

See Engagement Letter, Exhibit A, pp. 1-14.

**B.     ARGUMENT**

    Section 328 provides for retention of a professional under § 327 or § 1103 on any reasonable terms and conditions of employment. It further provides that compensation may be reduced only if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

    This latter standard makes it much more difficult to object to fees at the end of the case if it appears that the fees requested are not reasonable. Case law has held that when the terms of employment in a professional's application or order authorized compensation under § 328, the Court is limited to the "improvident in light of developments not capable of being anticipated" standard of review under § 328. This type of retention under § 328 prohibits the Court, creditors, interested parties and the UST from objecting to a professional's fees based upon the "reasonableness" standard of § 330. See In re First Magnus Fin. Corp., No. BAP.AZ-08-1160-PADMO, 2009 WL 7809001, at *7 (B.A.P. 9th Cir. Feb. 24, 2009) (citing Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.), 229 F.3d 824, 829 (9th Cir.2000) and holding "while § 330(a) requires it, § 328(a) severely limits the bankruptcy court's authority to conduct an after-the-fact "reasonableness analysis" concerning the value of a professional's service"); In re Circle K Corporation, 279 F.3d 669, 674 (9th Cir. 2002); Pitrat v. Reimers (In re Reimers), 972 F.2d 1127, 1128 (9th Cir.1992); In re Confections by Sandra, 83 B.R. 729 (9th

- 3 -

Case 2:16-bk-06712-BKM    Doc 170    Filed 12/16/16    Entered 12/16/16 18:44:11    Desc
Main Document    Page 3 of 7

Cir.BAP1987); In re Gypsum Company, 123 F.3d 861, 863 (5th Cir. 1997); In re Merry-Go-Round Enterprises, Inc., 244 B.R. 327, 337 (Bankr. D. Md. 2000).

Use of the standard of review under § 330 is the local practice in the District of Arizona. It is a fair standard, which allows the Court, creditors, other interested parties, and the UST to review a request for compensation to determine whether the request is reasonable and whether the proposed compensation is for actual, necessary services, and expenses. Rather than putting the burden "up front" at the employment application stage and forcing the Court, creditors and the UST to try and guess what anticipated developments may make the employment agreement "improvident," the burden should be on the professional to show that its fees are reasonable and that the services provided are actual and necessary - *after* the services are performed. The UST requests that the Application be modified to provide for a "reasonableness" standard of review under § 330, rather than the "improvident under the circumstances incapable of being anticipated" standard of review under § 328. Approving employment under the § 327 "reasonableness" standard avoids the possibility of the Court being required to approve fees that it believes to be unreasonable.

At this time, there is insufficient information to determine whether the terms and conditions of the Application are reasonable. No detail is included on how Proposed FA derived their initial analysis costing an estimated $18,000 to the Bankruptcy Estate. No information has been provided regarding the involvement of other professionals and paraprofessionals or limitations as to expenses. Further, no information has been provided concerning the exit financing on which Proposed FA is to negotiate. It would appear that if the standard of success for exit financing is limited to "a financing that closes as part of a confirmed plan of reorganization in this case," then Proposed FA may be entitled to a windfall without having put much or any effort in securing such financing. It is impossible at this time to determine whether these terms and conditions of the Application are reasonable.

- 4 -

It is also unclear whether the Application requires Proposed FA to file interim and final fee applications or maintain time records. Although the Proposed FA recognizes that they are being compensated by the Debtor's estate, it is unclear how monthly invoices presented by the Proposed FA can be "due upon presentation" and if unpaid, "Proposed FA may case all services . . . until paid." This does not appear to fall in line with applications being submitted for the Court and other interested parties to review and to respond to their fees and expenses, despite the Proposed FA being retained pursuant to § 328 or not. Any request to forego the filing of interim and final fee applications (and also maintaining time records) should be denied.

Moreover, any waiver of liability, including but not limited to breach of fiduciary duty, fraud, and even negligence, should be stricken. Indemnification of substandard conduct is inappropriate, especially as it relates to attorneys and other professionals employed pursuant to §§ 327 and 328 of the Bankruptcy Code. Such professionals owe fiduciary duties to their clients, and such duties should not be less in bankruptcy proceedings than in matters outside of bankruptcy. See, e.g., Hansen, Jones & Leta, P.C. v. Segal, 220 B.R. 434, 454 (D.Utah 1998) (stating duties to the client are the same for bankruptcy practitioners as well as non-bankruptcy practitioners); see also In re Envirodyne Industries, Inc., 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993) (holding the requirements of §327(a) reflect "congressional intention to hold professionals performing duties for the estate to strict fiduciary standards"); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991) (indicating indemnification is inconsistent with professionalism; professionals should not be relieved of the consequences of their actions); In re Mortgage & Realty Trust, 123 B.R. 626, 630 (Bankr. C.D. Cal. 1991) (stating ethics rules "prohibit an attorney from obtaining an indemnity from a client in connection with professional services"). Similar to the legal profession, it has long been accepted as unethical for a professional, including certified public accountants, to accept any form of exoneration of liability from

- 5 -

its client. See Ariz. Rev. Stat. Ann. § 32-741(A)(4) (Thomson Reuters 2016) (stating that after notice and an opportunity for a hearing, the board may revoke or suspend any certificate granted to a certified public accountant for "cause," which includes "[d]ishonesty, fraud or gross or continuing negligence in the practice of accounting."

WHEREFORE, the UST respectfully requests that the Application be denied to the extent it is seeking (1) employment pursuant to § 328; (2) the allowance of unlimited expenses and use of other professionals/paraprofessionals; (3) the granting of a Transaction Fee without any context possibly via a future separate DIP financing arrangement, including but not limited to, details as to the time and effort expended by Proposed FA; (4) any exemption from filing interim and final fee applications (including maintaining time records); and (5) the waiver of any liability, including but not limited to breach of fiduciary duty, fraud, and even negligence.

RESPECTFULLY SUBMITTED this 16th day of December, 2016.

ILENE J. LASHINSKY
United States Trustee
District of Arizona


 /s/ PC (#027115)
PATTY CHAN
Trial Attorney

- 6 -

| | |
|---|---|
| 1 | Copies of the foregoing emailed on December 16, 2016 and mailed on December 19, 2016, to: |
| 2 | |
| 3 | ADAM E. HAUF<br>HAUF LAW, PLC.<br>4225 W GLENDALE AVENUE |
| 4 | SUITE A-104<br>PHOENIX, AZ 85051 |
| 5 | Email: adam@hauflaw.com<br>Debtor's Attorney |
| 6 | |
| 7 | CAROLYN J. JOHNSEN<br>KATHERINE ANDERSON SANCHEZ<br>DICKINSON WRIGHT PLLC |
| 8 | 1850 N. CENTRAL AVENUE #1400<br>PHOENIX, AZ 85004-4568 |
| 9 | Email: cjjohnsen@dickinsonwright.com<br>Email: ksanchez@dickinsonwright.com |
| 10 | Attorneys for the Official Committee of Unsecured Creditors |
| 11 | FENNEMORE CRAIG, P.C. |
| 12 | Cathy L. Reece<br>2394 E. Camelback Rd., Suite 600 |
| 13 | Phoenix, Arizona 85016-3429<br>Email: creece@fclaw.com |
| 14 | Attorneys for Goldman Advisers, LLC |
| 15 | ELIZABETH WELLER |
| 16 | LINEBARGER GOGGAN BLAIR & SAMPSON, LLP<br>2777 N. Slemmons Freeway Suite 1000 |
| 17 | DALLAS, TX 75207<br>Email: dallas.bankruptcy@publicans.com |
| 18 | Attorneys for Montague County and Tyler County |
| 19 | JOHN P. DILLMAN |
| 20 | LINEBARGER GOGGAN BLAIR & SAMPSON, LLP<br>PO Box 3064 |
| 21 | HOUSTON, TX772s3-3064<br>Email: houston bankruptcy@publicans.com |
| 22 | Attorneys for Madison County |
| 23 | _____ |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |